2024 IL App (1st) 220864

Nos. 1-22-0864 and 1-22-0865 (cons.)

Opinion filed August 12, 2024

FIRST DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 99 CR 147 and |
| | ) | 99 CR 148 (cons.) |
| ANTOINE ANDERSON, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Thomas J. Hennelly, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.

Justices Lavin and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant Antoine Anderson appeals following his resentencing in 2022 on two convictions for first degree murder arising from separate incidents that occurred one week apart in 1998, when defendant was 17 years old. This resentencing occurred based on the State's acknowledgement in postconviction proceedings that defendant's original sentences, which were 50 years on the first conviction and natural life on the second conviction, did not comport with *Miller v. Alabama*, 567 U.S. 460 (2012), and the line of Illinois cases that followed it. Defendant's resentencing resulted in new sentences of 37 years and 40 years, to run consecutively. Defendant now argues that these

sentences, which in aggregate total 77 years, are unconstitutionally excessive. He requests this court to reduce the sentences or to remand for a second resentencing hearing. For the reasons that follow, we reject defendant's arguments and affirm the sentences imposed.

¶ 2                                    I. BACKGROUND

¶ 3        The evidence adduced at defendant's two trials is set forth in detail in this court's earlier decisions on direct appeal. In November 1998, defendant was a member of the Gangster Disciples. Both shootings occurred near the Ida B. Wells Homes housing project, when defendant was seeking revenge after his brother was shot in the leg by a member of the Black Disciples, a rival gang. On November 6, 1998, defendant and a fellow Gangster Disciple obtained a rifle, and both men used it to fire shots at persons they believed were members of the Black Disciples. In the course of shooting the rifle, defendant shot and killed an uninvolved man named Harry Hudson, who was walking alone nearby. Defendant's girlfriend testified that defendant said the next day that Hudson " 'shouldn't have been in the way while they were shooting.' " Defendant was convicted of first degree murder for which he was originally sentenced to 40 years in prison.

¶ 4        On November 13, 1998, near the same location, defendant saw a vehicle that he believed belonged to the Black Disciples member who had shot his brother. Defendant borrowed a revolver and shot it several times at the front driver's side of the car. Neither the driver of the car nor any of its passengers were members of the Black Disciples, and none of them were involved in the shooting of defendant's brother. Rather, the driver was a man named Leroy Causey, who died from a gunshot wound to the head. Defendant made a written statement confessing to killing Causey, but he testified at trial that the statement was a false product of police brutality. Defendant was convicted of first degree murder. Based on the law existing at that time, defendant's prior conviction for first degree murder resulted in a mandatory sentence of natural life in prison for the

conviction involving Causey.

¶ 5     Defendant filed direct appeals to this court, challenging both of his convictions based on assertions of trial error. On April 18, 2003, this court entered an order affirming defendant's conviction for first degree murder involving Hudson. *People v. Anderson*, 337 Ill. App. 3d 1151 (2003) (table) (unpublished order under Illinois Supreme Court Rule 23). On November 26, 2003, this court affirmed the conviction for first degree murder involving Causey. *People v. Anderson*, 343 Ill. App. 3d 1282 (2003) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 6     In 2005, defendant filed a postconviction petition relating only to the case involving Causey. In 2006, this court affirmed the trial court's summary dismissal of that petition, rejecting the argument that defendant had presented sufficient new evidence that his confession was coerced by police brutality. *People v. Anderson*, 368 Ill. App. 3d 1215 (2006) (table) (unpublished order under Illinois Supreme Court Rule 23). Leave to appeal was thereafter denied by the supreme court. *People v. Anderson*, 223 Ill. 2d 639 (2007) (table).

¶ 7     The resentencing that is the subject of the present appeal arose in the course of postconviction proceedings that were first filed in 2007, involving both convictions. Over the long timeframe that those proceedings pended in the trial court, substantial developments occurred in the law involving sentencing of juveniles convicted of serious crimes. Most significantly, in 2012, the United States Supreme Court held that the Eighth Amendment to the United States Constitution (U.S. Const., amend. VIII) prohibits sentencing schemes in which sentences of life without parole are mandatory for offenders under age 18 at the time of their crimes. *Miller*, 567 U.S. at 479. The holding of *Miller* and the line of Illinois cases that followed it ultimately led the State in this case to agree that defendant was entitled to resentencing on both of his convictions.

¶ 8     Defendant's resentencing occurred on March 4, 2022. It resulted in the trial court

resentencing him to 37 years on the conviction for the first degree murder of Hudson and 40 years on the first degree murder of Causey. The trial court further determined in its discretion that the sentences must run consecutively for the protection of the public. See 730 ILCS 5/5-8-4(c) (West 2022). The trial court's explanation of its reasoning is set forth in detail in the analysis below. *Infra* ¶ 18. Defendant thereafter filed a motion to reconsider these sentences, which the trial court denied. This appeal then followed.

¶ 9                                   II. ANALYSIS

¶ 10        Defendant argues on appeal that the trial court's resentencing of him to an aggregate of 77 years for offenses he committed at age 17 is unconstitutionally excessive in violation of his rights under the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Defendant advances an identical argument under both the federal and state constitutional provisions, which is that his sentences are the result of the trial court's failure to properly apply (1) the juvenile sentencing factors of *Miller*, 567 U.S. at 477-78, (2) the overruled case of *People v. Holman*, 2017 IL 120655, ¶ 46, *overruled by People v. Wilson*, 2023 IL 127666, and (3) section 5-4.5-105(a) of the Unified Code of Corrections (730 ILCS 5/5-4.5-105(a) (West 2022)).[1]

¶ 11        Given the current state of the law in the area of juvenile sentencing, the court has some difficulty tracking defendant's exact argument as to the asserted constitutional shortcoming in his sentences. First, this case presents an unusual situation in that defendant's 77-year prison term is the product of two consecutive sentences imposed for separate convictions, stemming from separate incidents. Considered individually, neither the 37-year sentence for the first degree

_____

[1]Defendant does not raise a "traditional" proportionate penalties argument that his sentences are "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." See *People v. Leon Miller*, 202 Ill. 2d 328, 338 (2002).

murder of Hudson nor the 40-year sentence for the first degree murder of Causey qualifies as a *de facto* life sentence, which is one that exceeds 40 years. See *People v. Buffer*, 2019 IL 122327, ¶¶ 40-41. Accordingly, neither sentence alone is long enough to enable defendant to make the "threshold showing" that a juvenile offender is required to make to mount a *Miller*-based challenge under the eighth amendment or the proportionate penalties clause, which is that "his or her sentence is a life sentence or *de facto* life sentence." *People v. Hill*, 2022 IL App (1st) 171739-B, ¶ 42; accord *People v. Cavazos*, 2023 IL App (2d) 220066, ¶ 68. Only if defendant's two consecutive sentences can be considered in the aggregate is he arguably subject to a *de facto* life sentence. However, the ability to mount a constitutional challenge by aggregating multiple sentences arising from different incidents is a dubious proposition under both the eighth amendment (see *State v. Soto-Fong*, 474 P.3d 34, 41-42 (Ariz. 2020) (collecting cases)) and the proportionate penalties clause (see *People v. Elliott*, 272 Ill. 592, 600 (1916) (proportionate penalties clause "does not apply in any manner to the aggregate of the punishments inflicted for different offenses"); accord *People v. Carney*, 196 Ill. 2d 518, 529-30 (2001)). Further, the fact that defendant is statutorily eligible for parole after 20 years is an additional reason why his two sentences do not amount to a *de facto* life sentence. See 730 ILCS 5/5-4.5-115(b) (West 2022); *Cavazos*, 2023 IL App (2d) 220066, ¶ 43; *People v. Elliott*, 2022 IL App (1st) 192294, ¶ 56.

¶ 12    Second, even if defendant's claim overcomes the hurdle described above, his ability to mount a *Miller*-based constitutional challenge to his sentences immediately encounters a second hurdle, which is that no part of his sentences was imposed under a mandatory sentencing scheme. Instead, the 77-year aggregate length of defendant's prison term is the result of the trial court's determination in its discretion that his two sentences for first degree murder must run consecutively for the protection of the public. See 730 ILCS 5/5-8-4(c)(1) (West 2022).

¶ 13    As referenced above, *Miller* holds that the eighth amendment prohibits sentencing schemes in which life without parole is *mandatory* for offenders who committed crimes as juveniles. It requires that "youth and attendant characteristics" be part of a sentencing court's consideration when determining that life without parole is a proportionate sentence to impose. *Miller*, 567 U.S. at 479, 483. This eighth amendment principle extends also to mandatory *de facto* life sentences, *i.e.*, "a mandatory term of years that is the functional equivalent of life without the possibility of parole." *People v. Reyes*, 2016 IL 119271, ¶ 9.

¶ 14    Under current law (which defendant acknowledges was the law by the time he filed his opening brief in this case), the fact that defendant was resentenced under a sentencing scheme that granted the trial court the *discretion* to consider defendant's "youth and attendant circumstances" and to impose a sentence of less than *de facto* life is sufficient to satisfy the constitutional requirements of *Miller*. *People v. Wilson*, 2023 IL 127666, ¶¶ 38, 44 (citing *Jones v. Mississippi*, 593 U.S. 98, 105 (2021)); accord *People v. Morris*, 2023 IL App (1st) 220035, ¶ 55. The discretionary sentencing scheme itself is constitutionally sufficient unless the sentencing court " 'expressly refuses as a matter of law to consider the defendant's youth (as opposed to, for example, deeming the defendant's youth to be outweighed by other factors or deeming the defendant's youth to be an insufficient reason to support a lesser sentence under the facts of the case).' " *Wilson*, 2023 IL 127666, ¶ 38 (quoting *Jones*, 593 U.S. at 115 n.7).

¶ 15    We recognize that the present law, as set forth in the preceding paragraph, reflects an overruling of the prior rule, which was that *Miller* applied to sentences of life without parole imposed on juvenile offenders under discretionary sentencing schemes. See *Holman*, 2017 IL 120655, ¶ 40, *overruled by Wilson*, 2023 IL 127666, ¶ 42. The prior rule also required a trial court to apply *Miller* by making certain findings pertaining to "youth and its attendant characteristics"

when imposing a discretionary sentence of life without parole on a juvenile offender. *Id.* ¶ 46. Consideration of these factors is also a requirement of Illinois statutory law (see *infra* ¶ 17). See 730 ILCS 5/5-4.5-105(a) (West 2022); *Holman*, 2017 IL 120655, ¶¶ 45-46. However, in *Wilson*, our supreme court made clear that such additional findings are not a matter of constitutional entitlement under *Miller*. See *Wilson*, 2023 IL 127666, ¶¶ 36, 38, 42 (citing *Jones*, 593 U.S. at 114, 116).

¶ 16        Third, even under the prior rule (which reflected Illinois law at the time of defendant's resentencing), it is clear that defendant received the full constitutional protections of *Miller*, in that his sentences aggregating 77 years were imposed at a hearing in which consideration of his "youth and its attendant characteristics" were front-of-mind for the trial court. In other words, the trial court's comments demonstrate that it fully understood its task of resentencing defendant in conformance with the requirements of *Miller* and the factors to be considered under *Holman* and section 5-4.5-105(a) of the Unified Code of Corrections (730 ILCS 5/5-4.5-105(a) (West 2022)). See *Holman*, 2017 IL 120655, ¶¶ 45-46.

¶ 17        In resentencing defendant, the trial court began by stating that it had considered the evidence presented at trial, the presentence investigation report that had been prepared in 2002,[2] the comments at sentencing by the judge who had originally sentenced defendant (Judge Schultz), the evidence presented in aggravation and mitigation,[3] and defendant's statement in allocution. The trial court further stated that it had reviewed and considered *Miller* and the line of cases that followed it. The court also recognized that defendant had already served 20 years of his sentence,

---

[2]Defendant executed waivers of his right to an updated presentence investigation and report.

[3]Multiple comments by defendant's counsel and by the trial court indicate that a hearing occurred at which the trial court heard arguments in aggravation and mitigation. This apparently occurred on either June 9, 2021, or August 16, 2021. No transcripts from either court date are included in the record on appeal or mentioned by either party in their briefs.

meaning that he was eligible to apply for parole regardless of the sentences it imposed. See 730 ILCS 5/5-4.5-115(b) (West 2022). The trial court then read word-for-word the nine factors of section 5-4.5-105(a), which requires a trial court to consider the following additional factors in mitigation when sentencing a person under age 18 at the time of an offense:

> "(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

> (2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

> (3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

> (4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

> (5) the circumstances of the offense;

> (6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

> (7) whether the person was able to meaningfully participate in his or her defense;

> (8) the person's prior juvenile or criminal history; and

> (9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." *Id.* § 5-4.5-105(a).

¶ 18 After reciting the above preliminary considerations, the trial court provided the following explanation of its decision in resentencing defendant:

"Well, to apply the facts to the statute, I think what is informative and instructive is the Pre-Sentence Investigation that was prepared *** on behalf of Mr. Anderson back in January of 2002 and the sentencing judge's review and comments. And I think they're illustrative.

And to begin with, I'm going to quote Judge Shultz prior to his imposition of the sentence, some of the things that he observed and he discussed while reviewing the Pre-Sentence Investigation. And I say that because I think they're germane to answering some of the issues and some of the questions presented in the sentencing of individuals under the age of 18 when a crime is committed. The statute that I just recited.

\* \* \*

In his review of the pre-sentence, Judge Shultz observed: You described your childhood as a good one, not having suffered abuse by your family. Sometimes that is a potential explanation for the rage and the aggressiveness individuals show and that is a product of their environment. You indicate that that was not the case in your case. You indicate that you don't have any family members that have any substance abuse problems. Again, growing up in an environment where your mother and father and other relatives all in and out of jail or dealing with drugs or substance abuse could have also had a very depressing effect on your ability to nurture or grow. But you don't have any of that either.

You didn't take very much opportunity or advantage of the occasional opportunities that were placed in front of you. You dropped out of high school, suspended from high school at least twice and having had to repeat the 9th grade. You have no explanation as to why you dropped out of school.

You say that you're in good health, even though you suffered from a previous gunshot wound. It seems to me that having previously shot yourself or had been shot yourself that

that might put you in a better position to realize the impact of your actions with regard to Mr. Causey or Mr. Hudson, the two victims in the murder cases he was convicted of. But, apparently, being the victim of a gunshot wound yourself, it didn't have much significance, based upon the way you viewed life and how you were going to act among the law-abiding citizens of a decent community.

You don't have any mental health issues, as evidenced by your statements in the Pre-Sentence Report. *** [A]lthough you're a young man in good health, you didn't have the opportunity or desire to serve your country in the military.

\* \* \*

What I do see is with these *Miller* cases—and I've had the privilege of resentencing several people on *Miller* cases and I think the philosophy or the driving force behind *Miller* was two killings that occurred at the same instance. And that is why I think that paragraph for impetuosity, level of maturity at the time of the offense, ability to consider risks and consequences is generally very, very important. Because oftentimes these *Miller* cases concern a single incident in which two people were killed. That is not the case in Mr. Anderson's situation. These were two separate incidents that were several days apart.

And, also, to add parenthetically, as the pre-sentence indicates, on October the 28th of 1998, Mr. Anderson was placed on a period of probation by Judge Shultz. It was Second Chance Drug Probation, an opportunity for Mr. Anderson to put a possible felony conviction behind him, to serve his probation appropriately and then have the matter removed from his record. It was a golden opportunity for Mr. Anderson to take the intervention of the court system and the Probation Department and to better his life.

To show you how he responded to that intervention and to that opportunity, ten days

later, on November the 6th of 1998, he put a bullet in the head of his first victim. The ink being barely dry on Judge Shultz's probation order granting him the second chance probation when he committed this first murder. That to me speaks volumes as to the type of person that Mr. Anderson was and how he profits from attempts to assist him in making his life a better place.

Also, what I find to be particularly disturbing in Mr. Anderson's case, as I alluded to, this was not a situation where there were two killings in one instance. The first instance occurred on November the 6th, in the Ida B. Wells Housing Project[.] *** [I]n retaliation and in an effort to kill *** a member of the Black Disciples gang, Mr. Anderson and a confederate—by the way, he used his confederate for both of these murders—procured a firearm, went to an area, being Ida B. Wells, where he and his confederate, his companion in crime, believed that the Black Disciples congregated.

And this weapon was a rifle, and they took turns firing the rifle. Fortunately for his confederate, he hit no one. And then it was Mr. Anderson's turn to fire the rifle and, once again, *** as occurs in these cases, the person struck with the rifle by Mr. Anderson was not a Black Disciple but it was 45-year-old [Harry] Hudson, a man who lived and *** had family in the Ida B. Wells Project.

In further aggravation to this, after completing this act, Mr. Anderson bragged to witnesses about the act and took pride in what he did. *** [T]his act was cold, calculated, planned and deliberate. This is not the act of impetuosity and a lack of a level of maturity.

But it becomes even worse because after he commits this murder, what does Mr. Anderson do? On November the 13th, seven days later, he recruits the same gang confederate. They also, again, acquire firearms and once again they go into the Ida B. Wells

Housing Project to commit another murder.

And like the prior murder, when Mr. Anderson was not careful to make sure no—not that that's in mitigation, to make sure that there's no innocent people in the way of a shooting, he mistook what he believed to be *** an automobile belonging to a Black Disciple, without bothering to determine if he was correct or not and he fired into *** the driver's side windows of an automobile, killing the second victim, which was Mr. Causey.

Leroy Causey, who was at the time a Navy veteran and a postman. He had a family in the Ida B. Wells that he was raising. Once again, another example not of impetuosity or immaturity. It's something that was cold, calculated, planned and deliberate.

I also read the statements made on behalf of the family by Mr. Causey's brother, Dexter Causey. That was read to Judge Shultz at the time. It was not done before me. I had the impact statements from Mr. Causey's daughter, and I had impact statements from a Ms. Anderson, on behalf of Mr. Hudson.

The statement and the testimony given by Mr. Causey was, in my view, not only eloquent but incredibly moving and emotional. And it describes in painful detail the pain that will never go away for the Causey family, the wounds that will never heal for the Causey family. You cannot help but be moved by reading or listening to his words and the tragedy and the suffering that they have to undergo, based on the defendant's actions. I've also considered that.

So the determination for the Court is I don't find that any of these factors in this case apply under [section 5-4.5-105(a)]. I find the circumstances of the offense to be horrific and without feeling and without caring. His participation—he engineered and planned and directed this whole thing and there's nothing in there, whether environmentally or any level

of maturity, that would cause me to make that a consideration in mitigation. And, frankly, I find his actions to be very aggravating and infuriating.

What Mr. Anderson did on both of those days, he acted as a predator, with the Ida B. Wells as his own private hunting ground and he didn't care if he killed a Black Disciple. It didn't matter to him. He was out to kill someone and it just so happened that neither victim was a Black Disciple but they were innocent people, law-abiding people going about their lives in this project.

It is my view that the people of the Ida B. Wells Project need to be protected from the likes of Mr. Antoine Anderson and his ilk. They are the ones who follow the law and live their lives every day in compliance with the law, and they have a right to expect that the law will safeguard and protect them from people like the defendant. It is those people that I believe the Court has an obligation to protect.

Quite frankly, I think protecting the Black Disciples is also a corollary to this but my real view on this is what is happening to these poor people who live in these housing projects, who have to live day in and day out, raise their families and be subjected to this kind of violence by gang members like Mr. Anderson.

Now, as the State points out in their memo, Mr. Anderson's cases are not mandatorily consecutive because murder became a triggering offense in 2000. It was after Mr. Anderson was sentenced and after this was committed. Normally, this would have been a mandatory consecutive sentence, but it is not mandatory consecutive."

At that point, the trial court cited and read section 5-8-4(c)(1) of the Unified Code of Corrections, which provides that a court may impose consecutive sentences if, having considered the nature and circumstances of the offense and the history and character of the defendant, it is the opinion

of the court that consecutive sentences are required to protect the public from further criminal conduct by the defendant. *Id.* § 5-8-4(c)(1). The court then concluded its resentencing of defendant by stating:

> "I've already put forth in the record *** how his conduct affects the people who live and work in Ida B. Wells and it is the Court's opinion that this provision of the permissive consecutive statute is appropriate in Mr. Anderson's two cases. Therefore, based on that and based on everything that I have indicated, the Court is of the opinion the appropriate sentence for Mr. Anderson in Case No. 99 CR 147 is 37 years in the Illinois Department of Corrections; and that that sentence is to be served consecutively to, for the reasons enumerated, with the sentence in Case No. 99 CR 148. And the sentence in that case is 40 years in the Illinois Department of Corrections and including three years of mandatory supervised release."

¶ 19    We find that the above statements by the trial court at resentencing demonstrate that defendant's sentences are the product of a hearing in which he fully received the protections to which he was constitutionally entitled under *Miller* and progeny. In other words, factors of defendant's youth and its attendant characteristics were the foremost consideration for the trial court. The fact that the trial court found these youth-related factors to be outweighed by defendant's "horrific" conduct in killing two men uninvolved in the nonfatal shooting of his brother and by the need to protect the public from further crimes, thereby finding defendant's youth to be an insufficient reason to support a shorter sentence, does not mean that these factors were not given appropriate consideration by the trial court. *Wilson*, 2023 IL 127666, ¶¶ 38, 44.

¶ 20    Turning to the specific points raised by defendant, the only argument that we deem to be of constitutional magnitude is his overarching assertion that the trial court incorrectly applied the

factors of section 5-4.5-105(a) to the point of "almost express non-compliance." He argues that the trial court's sentencing rationale indicates that it was "either ignorant of the statute's purpose, or unwilling to abide by its requirements." However, for the reasons set forth in the preceding paragraph, we flatly reject any argument that the trial court's overall application of the statutory factors was constitutionally deficient.

¶ 21    Instead, defendant's argument that he received an excessive sentence as a result of errors in the trial court's application of the statutory factors is reviewed for abuse of discretion. *People v. Merriweather*, 2022 IL App (4th) 210498, ¶ 26 (citing *People v. Alexander*, 239 Ill. 2d 205, 212 (2010)). A sentence will be deemed an abuse of discretion where it is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Alexander*, 239 Ill. 2d at 212 (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000), citing *People v. Fern*, 189 Ill. 2d 48, 54 (1999)). The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference. *Id.* Because the trial judge has a better opportunity to observe factors such as the credibility and demeanor of witnesses than does a reviewing court relying on the cold record, we give great deference to the trial court's sentencing decision. *Id.* at 212-13. A reviewing court may not substitute its judgment for that of the trial court merely because the reviewing court would have balanced the sentencing factors differently. *Id.* at 213.

¶ 22    Defendant argues that the trial court misapplied the provision of the statute providing that "if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105(a)(9) (West 2022). In its remarks upon resentencing defendant, the trial court stated nothing about defendant's remorse or lack thereof. At the hearing on the motion for reconsideration, the trial court made the

statement that in the trial court's view, defendant had not shown remorse. Defendant argues on appeal that it is "crystal clear" that the trial court "chose to consider a lack of remorse, not merely as an aggravator, but as a basis for upping the ante" to make the sentences consecutive "because of a factor it was instructed not to consider in aggravation."

¶ 23     We reject this argument that the trial court erred in considering lack of remorse as an aggravating factor. By its own terms, the cited provision is inapplicable because defendant made a statement in allocution. Defendant stated:

> "Yeah, I just send my condolences out to the victims' family and things like that. You
> know, I just ask that—you know, to be back out there with my family and my kids. And I
> just ask for, you know, any type of leniency to be able to be back out there with them and,
> basically, take care of my granny, who's actually 77 years old, and live my life. I appreciate
> that, your Honor."

The trial court was in the best position to evaluate the effect of defendant's statement on its resentencing decision. As remorse was not mentioned in the trial court's sentencing remarks, we have no basis for stating that it played any role in its decision, let alone an improper one.

¶ 24     With respect to the statutory factor concerning age, impetuosity, and level of maturity at the time of the offense (*id.* § 5-4.5-105(a)(1)), defendant argues that the trial court erred by deferring to the statements and findings of fact made by Judge Schultz when he originally sentenced defendant. He makes a related argument as to the factor assessing "potential for rehabilitation or evidence of rehabilitation, or both." *Id.* § 5-4.5-105(a)(4). Defendant argues that the trial court's reliance on Judge Schultz's statements and findings was error because his comments were made in a context where he was imposing a mandatory natural life sentence; he had no reason to assess the impact of defendant's youth on his actions. He argues also that Judge Schultz's statements

were made nearly a decade prior to the recognition in *Miller* that the science of juvenile brain development has an effect in sentencing. He argues that, as the role of the trial court here was to fashion new *Miller*-compliant sentences by retroactively assessing defendant's mental state as of 1998 (and not to review the original sentences), there was simply no need or basis for deferring to Judge Schultz's conclusions. Regarding rehabilitation, defendant argues that the trial court's deference to Judge Schultz's comments robbed it of significant information about "what path [defendant] has charged since originally sentenced in 2002." He argues that it was "nonsensical" for the trial court to deny itself access to such pertinent information about rehabilitation when resentencing a juvenile offender in the context presented here.

¶ 25    We reject defendant's argument that the trial court improperly deferred to statements or findings made by Judge Schultz when he originally sentenced defendant for his second conviction. In our review of the record, we find nothing to suggest that the trial court failed to undertake its own evaluation of the evidence and argument concerning the statutory factors and reach its own conclusions as to an appropriate resentencing of defendant. Contrary to defendant's argument, all that the trial court stated was that it found "some of the things" that Judge Schultz observed and discussed in his review of defendant's presentence investigation were "germane" to the statutory factors it was called upon to address. This included defendant's statements that he had a good childhood; that his family and home environment had not included physical abuse, substance abuse, drug dealing, or relatives in jail; that his educational background included dropping out of school in the 9th grade; that he was in good health, despite being the victim of a gunshot wound himself; and that he had no mental health issues. These are relevant facts appropriately considered under the statute. Judge Schultz's statements did not comprise the totality of the trial court's consideration, and it is clear that the trial court considered factors beyond those mentioned by

Judge Shultz. As defendant points out, the trial court here also had before it information from the presentencing report that defendant's father was killed when he was only five years old, that he had been abandoned by his mother to the custody of his grandmother, and that he was raised in a bad neighborhood. Defendant also cites evidence of his gang involvement, arguing it is undeniable the pressure that gang membership had on his actions. As this was all evidence before the trial court and nothing affirmatively indicates the trial court did not consider it, we presume that the trial court considered this evidence as part of its resentencing determination. *People v. Cornejo*, 2020 IL App (1st) 180199, ¶ 142.

¶ 26 We find inapposite the case relied upon by defendant, which is *People v. Hernandez*, 298 Ill. App. 3d 36 (1998). There, in postconviction proceedings, a juvenile witness who had testified for the State at the defendant's trial provided an affidavit stating he had given a false statement due to abuse by police in questioning him. *Id.* at 38-39. Although the judge presiding over the postconviction proceedings had not presided at trial, the postconviction petition was dismissed at the second stage without an evidentiary hearing. This court reversed, reasoning that it was "not plausible that the postconviction court could assess [the recanting witness'] credibility based on a cold reading of the trial transcript and affidavits." *Id.* at 40. In the present case, by contrast, no issue of credibility was before the trial court when it referenced Judge Schultz's statements from the original sentencing of defendant. Accordingly, *Hernandez* provides no support for defendant's argument in this instance.

¶ 27 Defendant argues that the circumstances of the two offenses and the minimal planning (see 730 ILCS 5/5-4.5-105(a)(5), (6) (West 2022)) show that his efforts to exact revenge for his brother's shooting were so poorly executed that they must be considered the impulsive acts of a juvenile driven by anger he could not control. He argues that his immaturity is shown by the fact

that he committed the two offenses in his own neighborhood, in front of witnesses who knew and could identify him. He argues that the trial court was wrong to characterize his conduct as cold and calculated; rather, he contends that it shows a youthful inability to rationally process his own experiences and learn from his mistakes. We reject this argument. The trial court's remarks make clear that it appropriately considered the seriousness of defendant's offenses and his level of participation and planning of them, and defendant's argument is nothing more than an improper request that we substitute our judgment for that of the trial court and reweigh these factors differently. See *Alexander*, 239 Ill. 2d at 213.

¶ 28        Finally, defendant argues that the trial court erroneously "attempted to excuse the length of the aggregate sentence by presuming a parole remedy might eliminate any harshness." In the trial court's preliminary remarks in resentencing defendant, it noted that because defendant had already served 20 years of his sentence, he was statutorily eligible to apply for parole, regardless of the sentences imposed. See 730 ILCS 5/5-4.5-115(b) (West 2022). We find nothing improper about the trial court's recognizing that defendant was eligible for parole. Under our case law, eligibility for parole is a relevant consideration and a proper factor in evaluating whether the length of a sentence is excessive. *Elliott*, 2022 IL App (1st) 192294, ¶ 59. Under the circumstances of this case, we find also that defendant's parole eligibility after 20 years supports the conclusion that the sentences imposed at his resentencing were not excessive. *Id.*; accord *People v. Kendrick*, 2023 IL App (3d) 200127, ¶ 53.

¶ 29                                    III. CONCLUSION

¶ 30        For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 31        Affirmed.

---

*People v. Anderson*, 2024 IL App (1st) 220864

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 99-CR-147, 99-CR-148; the Hon. Thomas J. Hennelly, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, Matthew B. Chapman, and Robert Hirschhorn, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, David H. Iskowich, and Retha Stotts, Assistant State's Attorney, of counsel), for the People. |

---